IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUBREY LAND, DAVID CLARK,
DOUG GLISSON, JOHN ULM,
JAMES PADGETT and
CHRISTINA BULLINS,

    Plaintiffs,

vs.                                      CASE NO.: 4:14-cv-00347-WS-CAS

MARIA DIBERNARDO

    Defendants.
_____/

## THIRD AMENDED COMPLAINT

Plaintiff, CHRISTINA BULLINS (hereinafter collectively described as Plaintiff or "BULLINS"), by and through their undersigned counsel, hereby sues the Defendants, MARIA DIBERNARDO ("DIBERNARDO"), for damages and file this **Third Amended Complaint** and allege:

### JURISDICTION AND VENUE

1.    This is a Constitutional claim brought under 42 U.S.C. 1983, by and through The Freedom of Speech Clause of the *First Amendment*. The Court has subject matter jurisdiction. The acts or omissions which caused the Plaintiff's injuries occurred primarily within the Second Judicial Circuit of the State of Florida. Venue lies within the United States District Court for the Northern District of Florida pursuant to Title 28 U.S.C. §1391. Federal Court jurisdiction is based on Title 28 U.S.C. §1331.

2.    This 42 U.S.C. 1983 action asserts that the Plaintiff's *First Amendment* rights have been violated. Plaintiff has been subjected to retaliation i.e. termination, for exercising her

1



*First Amendment* rights by disclosing violations of the *Eighth Amendment* as early as September 2010 in connection with the death of an inmate Randall Jordan-Aparo and engaging in protected speech and political activities continuing thereafter. Plaintiff BULLINS engaged in these protected activities as a private citizen. These protected activities and disclosures were received by senior Florida Department of Corrections officials, including the following:

    a. Timothy Cannon (hereinafter "CANNON"), who at the time of receiving such disclosures was in charge of Region 1 of the Florida Department of Corrections, which included the facility in Franklin County, Florida, where Plaintiff's brother was an inmate, and where on September 19, 2010, Randall Jordan Aparo was gassed to death. Plaintiff's brother was a witness to Randall Jordan Aparo's death. Subsequently, CANNON was appointed Assistant Secretary of the Florida Department of Corrections. CANNON had actual knowledge of Plaintiff BULLINS protected activity and disclosures, and was also the involved in the retaliatory termination of Plaintiff in 2013 after the Aparo death investigation was reopened in the Spring of 2013, and which is still being investigated by the Florida Department of Law Enforcement and the Department of Justice.

    b. Russell Hosford, (hereinafter "HOSFORD") at the time of receiving Plaintiff BULLINS protected disclosures in 2010 and 2011, was the Institutions Secretary for the Florida Department of Corrections.

    c. Diane Andrews (hereinafter "ANDREWS"), was the then warden of Franklin Correctional Institution at the time of the Plaintiff's protected activity and the death of Randall Jordan Aparo. ANDREWS continues to be employed by the Florida Department of Corrections.

2

3. Additionally, Plaintiff BULLINS engaged in protected speech in connection with collective bargaining, union activities, and her blogs on numerous occasions critical of the Florida Department of Corrections, including but not limited to the following dates:

    a. January 31, 2012;

    b. November 28, 2012;

    c. January 16, 2013;

    d. April 10, 2013; and

    e. May 28, 2013.

4. Plaintiff BULLINS seeks money damages against DIBERNARDO in her individual capacity.

## PARTIES

5. Plaintiff CHRISTINA BULLINS was employed by Florida Department of Corrections ("FDOC") as a correctional Probation Supervisor at the time of her termination. BULLINS had been employed by FDOC for approximately 13 years. Further, Plaintiff BULLINS, as a private citizen, was a volunteer political coordinator for the Teamsters Union who routinely met with legislators and others engaged in discussions regarding FDOC policies and procedures, as well as pending legislation. Further, Plaintiff BULLINS was a blogger who routinely posted blogs critical of FDOC.

6. ANDREWS at all material times hereto was the Warden of Franklin Correctional Institute and caused Plaintiff's supervisor and reprimanding authority, Defendant MARIA DIBERNARDO, to file a MINS Incident Report[1] naming Plaintiff BULLINS as the subject on

---

[1] "MINS" is an acronym for Management Information Notes Summary, which within Florida Department of Corrections is a summary of an incident report critical of an FDOC employee which may result in discipline up to and including termination. Included in a MINS is the actual incident report filed against the FDOC employee which includes the date of the incident, the factual summary, a more detailed description of the incident and, in some cases, the disposition. The MINS constitutes a permanent record. MINS can be filed for general harassment, contraband,

November 9, 2010. CANNON, at the time of Plaintiff BULLINS protected disclosures regarding Randall Jordan Aparo and her brother, was in charge of Region 1. CANNON, at the time of Plaintiff BULLINS termination, was the Assistant Secretary of FDOC, and was involved in terminating Plaintiff BULLINS. Thus, Defendant DIBERNARDO was the "cat's paw" of ANDREWS and CANNON who bore animus against Plaintiff as a result of her Aparo disclosures and her union activity. Hence, Defendant DIBERNARDO had actual knowledge of the Plaintiff BULLINS' protected Aparo disclosures occurring in 2010 and 2011, as well as her union activity. Further, Defendant DIBERNARDO was the ultimate supervisor of Plaintiff BULLINS and was her terminating authority within FDOC.

7. Defendant MARIA DIBERNARDO at all material times hereto, up to and including the date of the termination of Plaintiff BULLINS, was the Circuit Administrator for the Florida Department of Corrections in the circuit where the Plaintiff was employed. Defendant DIBERNARDO was instructed by ANDREWS to file a MINS Incident Report on November 9, 2010 directed at the Plaintiff. The MINS Incident Report of November 9, 2010 essentially alleged that Plaintiff BULLINS had violated FDOC regulations by making public records requests as a private citizen, using her private email. Defendant DIBERNARDO would have had no knowledge of Plaintiff's public records requests, but for ANDREWS providing that information to Defendant DIBERNARDO or causing such information to be provided to Defendant DIBERNARDO[2]. Hence, at the time Defendant DIBERNARDO terminated Plaintiff BULLINS in 2013, Defendant DIBERNARDO had actual knowledge of some, if not all of the Plaintiff's Aparo disclosures and her union activities, as set forth below.

---

battery, improper conduct and other miscellaneous violations.
[2] The November 9, 2010 MINS Incident Report states that Defendant DIBERNARDO received an email from an onsite subordinate of ANDREWS, obviously advising Defendant DIBERNARDO of Plaintiff's public records requests related to the death of Randall Jordan-Aparo.

4

## BULLINS' APARO DISCLOSURES

8. Plaintiff BULLINS had a brother, Joseph Avram, who was incarcerated at Franklin Correctional Institute at the time of inmate Randall Jordan-Aparo's death on September 19, 2010. Joseph Avram was a witness to the homicide of Aparo and a witness to the abuse of Aparo leading up to Aparo's death. **This information was obtained by Plaintiff as a private citizen and not within the course and scope of her duties as a Correctional Probation Supervisor.**

9. Joseph Avram, on September 20, 2010, made a phone call to his sister, Kim Donovan, on a recorded line, advising her that he had been a witness to the death of an inmate and that he had concerns about his physical safety.

10. The following day Joseph Avram called Plaintiff BULLINS and advised Plaintiff BULLINS that he, Avram, had witnessed the abuse of an inmate (Aparo) and that Avram was concerned about physical retaliation by prison guards at Franklin Correctional Institute.

11. On October 21, 2010 and thereafter, Plaintiff BULLINS and her sister Kim Donovan began to send public records requests to the Franklin Correctional Institute regarding encounters her brother Avram had with various prison guards, including a guard who Avram had identified as being involved with the death of Randall Jordan-Aparo.

12. These public records requests resulted in ANDREWS causing Defendant DIBERNARDO to file retaliatory MINS Incident Reports in November of 2010 and March of 2011 targeting the Plaintiff.

13. On or about November 7, 2010 Plaintiff BULLINS and her sister, Kim Donovan, sent a letter to the Secretary of the Florida Department of Corrections, Walter McNeil, that her brother Joseph Avram had witnessed the physical abuse of Aparo citing specifics in the letter which would indicate that Avram was in fact a witness to the physical abuse of Aparo. Plaintiff

BULLINS and her sister Kim Donovan mentioned in the letter that her brother Avram was fearful of retaliation while in confinement at Franklin Correctional Institute and expressed concern about the safety of their brother. This letter to Walter McNeil was sent by Plaintiff BULLINS, as a private citizen, based on information not obtained by Plaintiff BULLINS within the course and scope of her employment, but as a private citizen.

14. On November 9, 2010, Plaintiff BULLINS and her sister Kim Donovan sent another letter to Department Secretary Walter McNeil concerning prison guard retaliation against her brother Joseph Avram. This second letter to Walter McNeil was sent by Plaintiff BULLINS, as a private citizen, based on information not obtained by Plaintiff BULLINS within the course and scope of her employment, but as a private citizen.

15. On or about January 23, 2011 Plaintiff BULLINS, by email, corresponded with FDOC Deputy Secretary of Health Services, Olugbenga Ogunsanwo, as a private citizen, concerning her brother Joseph Avram and advising Ogunsanwo that Avram was a witness to an inmate who "was abused and gassed too much which resulted in his death." Plaintiff BULLINS advised Ogunsanwo that other inmates in addition to her brother had expressed fear of retaliation from the application of chemical agents in that guards were referring to Aparo's death when threatening to gas Avram and other inmates at Franklin Correctional Institute.

16. On or about February 24, 2011, Plaintiff BULLINS sent an email to Russell Hosford, Assistant Secretary of the Department of Corrections, again referring to the death of Aparo and alleging that her brother Joseph Avram was being mistreated by one of the guards who was involved with the Aparo homicide. This email to HOSFORD was sent by Plaintiff BULLINS, as a private citizen, based on information not obtained by Plaintiff BULLINS within the course and scope of her employment, but as a private citizen from information obtained from

her brother, Joseph Avram. This email was forwarded on February 24, 2011, from ANDREWS to HOSFORD and CANNON, as well as other senior FDOC officials.

17. On March 3, 2011, Plaintiff BULLINS received a letter from ANDREWS, concerning Plaintiff BULLINS' letter regarding the death of inmate Aparo. ANDREWS threatened Plaintiff BULLINS by advising Plaintiff BULLINS that the allegations made by Plaintiff BULLINS to Secretary McNeil and others concerning the death of Aparo were "baseless". ANDREWS knew that BULLINS' allegations were in fact not baseless and her threat to Plaintiff BULLINS was done both in retaliation for Plaintiff BULLINS' disclosures and to intimidate Plaintiff BULLINS from making further disclosures.

18. In retaliation for Plaintiff BULLINS' letters to Secretary McNeil, Hosford and others, ANDREWS reported Plaintiff BULLINS to the Department of Corrections' Inspector General due to her "baseless" allegations concerning the death of Randall Jordan-Aparo. This resulted in a MINS Investigation being opened against Plaintiff BULLINS in retaliation for her Aparo disclosures. This complaint by ANDREWS, upon information and belief, was made in March 2011 and in close temporal proximity to Plaintiff BULLINS' protected disclosures concerning the death of Aparo. Plaintiff BULLINS was advised by her direct supervisor that ANDREWS had filed or caused the filing of the March 2011 MINS.

19. On or about March 14, 2011, after ANDREWS opened a MINS investigation on Plaintiff BULLINS, Plaintiff BULLINS filed a complaint with the Inspector General, Office of the Governor, which was treated by the Inspector General as a Whistle-Blower complaint. Included in the Whistle-Blower complaint were allegations concerning the death of Aparo. On or about June 7, 2011 the Inspector General, Office of the Governor, advised Plaintiff BULLINS that Plaintiff BULLINS was not entitled to whistle-blower protection.

7

20. HOSFORD, CANNON, ANDREWS, and Walt McNeil received these protected disclosures while the Randall Jordan Aparo death investigation was still being conducted by the Florida Department of Law Enforcement and FDOC, and thus should have been contained in the Randall Jordan Aparo investigative file, which was closed on or about April 28, 2011. Neither Plaintiff BULLINS, her sister Kim Donovan, nor their brother Joseph Avram were interviewed in connection with the investigation which terminated on or about April 28, 2011, despite such high ranking FDOC officials being aware of Plaintiff BULLINS disclosures and public records requests.

21. The investigation pertaining to the death of Randall Jordan Aparo was reopened in the Spring of 2013, and is still ongoing. In fact, according to the FDOC website as of March 15, 2016, the Florida Department of Law Enforcement and the Department of Justice, through the Federal Bureau of Investigation, are still investigating the death of Randall Jordan Aparo, and thus the case remains open.

22. The Randall Jordan Aparo investigation was reopened in the Spring of 2013 when investigators from FDOC were investigating a separate matter.

**THE TEMPORAL PROXIMITY OF BULLINS' 2010 AND 2011 DISCLOSURES CONCERNING RANDALL JORDAN APARO SHOULD BE MEASURED FROM THE SPRING OF 2013, TO THE DATE OF HER PREDETERMINATION LETTER OF AUGUST 6, 2013**

23. It is undisputed that Plaintiff BULLINS made numerous disclosures as a private citizen within days of the Randall Jordan Aparo death on September 19, 2010. These disclosures are set forth in Paragraphs 8-17 *supra*.

24. Because Plaintiff BULLINS, Kim Donovan, and Joseph Avram were not interviewed in the initial Aparo death investigation, despite the fact that Plaintiff BULLINS disclosures should have been in the Aparo investigative file, the Court should not begin to treat

Plaintiff BULLINS 2010 and 2011 disclosures as disclosures made on those dates, because the initial investigation was closed in April of 2011 without interviewing the Plaintiff, her sister, or her brother.

25. Plaintiff BULLINS' disclosures and protected activity did not become a problem for FDOC, DIBERNARDO, ANDREWS, or CANNON until the Spring of 2013, as this was (1) the first time that her disclosures and protected activity became known to the new investigators, and was actually followed up on; (2) the first time the tapes of the conversations between Joseph Avram and Plaintiff BULLINS and Avram and Kim Donovan were discovered and listened to. In fact, the identities of these witnesses were not disclosed in the investigative report, closing the 2010 and 2011 initial investigation into the Randall Jordan Aparo death investigation. After the reopening of the Aparo death investigation, it became clear that the Plaintiff, her sister, and her brother would become critical and essential witnesses in the reopened 2013 death investigation of Randall Jordan Aparo against FDOC, and certain FDOC employees, including senior employees who may have acted to cover up the circumstances surrounding the death of Randall Jordan Aparo.

### BULLINS' SUBSEQUENT PROTECTED STATEMENTS RESULTING IN TERMINATION

26. In addition to Plaintiff BULLINS' disclosures concerning the death of Randall Jordan Aparo, Plaintiff BULLINS was a volunteer political coordinator and lobbyist for the Teamsters Local Union No. 2011 (The Collective Bargaining Unit for all professional and non-professional law enforcement officers certified pursuant to Florida Statute 943). From at least December 2011 to the date of her termination, Plaintiff BULLINS engaged in lobbying activities as a private citizen, often opposing the legislative position espoused by her employer FDOC. Plaintiff BULLINS engaged in this activity while taking vacation and leave time.

27. Plaintiff BULLINS also testified as a private citizen at a public hearing before the State of Florida, Department of Corrections on November 28, 2012 concerning a proposed rule change in opposition to FDOC's proposed rule.

28. Further, Plaintiff BULLINS wrote articles FloridaPublicEmployees.com, as a blogger, as a private citizen, and outside the course and scope of her duties as an employee of FDOC, which were critical of FDOC on the following dates:

    a. **January 31, 2012**, "In the Words of a State Corrections Officer";

    b. **January 16, 2013**, "Smart Justice Alliance (SJA) Gives Presentation to the Senate Criminal Justice Committee";

    c. **April 10, 2013**, "Letter to Sen. Bradley: Vote Yes to Support Equal Raises for FDOC"; and

    d. **May 28, 2013**, "Call to Actions: Governor Scott, I Ask You to "Veto the Turkeys" in State Budget".

## BULLINS TERMINATION

29. On August 9, 2013, FDOC allegedly sent a predetermination letter to Plaintiff BULLINS to an incorrect address. Plaintiff BULLINS did not receive the predetermination letter and hence, did not respond to such letter and was terminated on October 24, 2013. The Plaintiff was terminated by Defendant DIBERNARDO, FDOC's Circuit Administrator, who was also the "cat's paw" for ANDREWS in connection with the retaliatory MINS Incident Report filed against the Plaintiff in connection with her Aparo public records requests. CANNON had actual knowledge of Plaintiff BULLINS Aparo disclosures, and had actual knowledge that the investigation had been reopened. Thus, CANNON had a motive to terminate and discredit Plaintiff BULLINS by denying her request for additional and donated sick leave or extension of

10

leave, despite FDOC routinely allowing employees similarly situated to Plaintiff BULLINS to keep their job despite exhausting all of their paid leave and FMLA leave. Defendant Dibernardo informed Plaintiff BULLINS that the central office denied her request for transferred sick leave, or donated sick leave, which is routinely allowed for all similarly situated employees.

30.     Plaintiff BULLINS' Aparo disclosures, as well as her politically protected blog post and political activity, resulted in her retaliatory pretextual termination from FDOC by Defendant DIBERNARDO. Further, when looked at holistically within the confines of the entire record provide temporal proximity and evidence of retaliatory action.

## COUNT I

31.     Plaintiff BULLINS realleges and reincorporates paragraphs 1 through 30 herein.

32.     This is an action pursuant to 42 U.S.C. 1983 by Plaintiff BULLINS against Defendant DIBERNARDO, for the violation of the Plaintiff's *First Amendment* rights.

33.     Defendant DIBERNARDO, has violated Plaintiff BULLINS' constitutional rights by retaliating against Plaintiff BULLINS concerning her disclosure of matters of substantial public concern, made outside the course and scope of her employment, based on information obtained outside the course and scope of her employment, and which express opinions of the Plaintiff which were widely disseminated via the internet and are protected by the *First Amendment.*

34.     Defendant DIBERNARDO and ANDREWS have caused retaliatory acts (false internal affairs complaints and ultimately termination) to be made against Plaintiff BULLINS as the result of the exercise of her Constitutional Rights. Plaintiff BULLINS has suffered injury from such retaliatory acts including, but not limited to, termination from employment.

35.     Plaintiff BULLINS requests all compensatory damages allowable pursuant to 42 U.S.C. 1983, costs, attorneys' fees pursuant to 42 U.S.C. 1988 and any other relief to which

she is awarded.

## DEMAND FOR JURY TRIAL

Plaintiff BULLINS demands a jury trial for all counts alleged above.

                        Respectfully submitted,

                        The Law Offices of
                        STEVEN R. ANDREWS, P.A.
                        822 North Monroe Street
                        Tallahassee, Florida 32303
                        (850) 681-6416 FAX: 681-6984
                        *Attorneys for Plaintiffs*
                        *//s// Steven R. Andrews*
                        STEVEN R. ANDREWS (FBN 0263680)
                        sandrews@andrewslawoffice.com
                        BRIAN O. FINNERTY (FBN 0094647)
                        bfinnerty@andrewslawoffice.com
                        service@andrewslawoffice.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Third Amended Complaint has been e-served this _____ day of _____, 2016, to:

Elmer C. Ignacio
Assistant Attorney General
Jason Vail
Assistant Attorney General
Office of the Attorney General
PL 01, The Capitol
Tallahassee, FL  32399-1050
Elmer.Ignacio@myfloridalegal.com
Jason.Vail@myfloridalegal.com
Lila.Neal@myfloridalegal.com

                        */s/ Steven R. Andrews*
                        STEVEN R. ANDREWS